IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
SPARTANBURG DIVISION

| | |
|---|---|
| American Contractors Indemnity Company, ) | |
| ) | CA No. 7:09-2145-TMC |
| Plaintiff, ) | |
| ) | |
| v. ) | **ORDER** |
| ) | |
| Carolina Realty and Development Company, Inc.; ) | |
| John Paul Baehr; Kimberly Baehr; William Lamar ) | |
| Baehr; Duffy Baehr; John Baehr; and Janis Baehr, ) | |
| ) | |
| Defendants. ) | |
| _____) | |

In this case, American Contractors Indemnity Company (American Contractors) seeks to enforce an indemnity agreement against the defendants Carolina Realty and Development Company, Inc. (Carolina Realty), John Paul Baehr, Kimberly Baehr, William Lamar Baehr, Duffy Baehr, John Baehr, and Janis Baehr (collectively, the defendants). This matter is before the court for review of the Report and Recommendation (Report) of the United States magistrate judge made in accordance with 28 U.S.C. § 636(b)(1) and Local Civil Rule 73.02 of the District of South Carolina. (Dkt. No. 187.)[1] The Report recommends granting American Contractors' motion for summary judgment in part and holding the issue of attorney's fees in abeyance (Dkt. No. 135); denying American Contractors' motion to designate an expert witness (Dkt. No. 165); and denying the defendants' motion to enforce settlement agreement or in the alternative for summary judgment (Dkt. No. 131). For the reasons set forth below, the court declines to adopt the Report. The court grants the motion to enforce settlement agreement and denies American

---

[1] The magistrate judge's recommendation has no presumptive weight, and the responsibility for making a final determination remains with the United States District Court. *Mathews v. Weber*, 423 U.S. 261, 270 (1976). The court is charged with making a de novo determination of those portions of the Report to which specific objection is made. The court may accept, reject, or modify, in whole or in part, the recommendation made by the magistrate judge or recommit the matter with instructions. 28 U.S.C. § 636(b)(1).

Contractors' motion for summary judgment.

## I.

This case arises out of a commercial surety contract and construction project. American Contractors is a commercial surety which issues payment and performance bonds. Generally, American Contractors issues bonds to general contractors or subcontractors in the construction business, whereby the contractor or subcontractor will perform obligations as required in a contract with an obligee. Bonds of this sort are standard in the construction industry. In 2006, American Contractors issued a bond to Carolina Realty as principal, securing Carolina Realty's performance vis a vis a general contractor, the Dick Corporation, related to a roofing project at Naval Air Station Pensacola in Pensacola, Florida. As is standard with bonds of this sort, American Contractors required indemnification prior to issuing the bond. Defendants John Paul Baehr, Kimberly Baehr, William Lamar Baehr, Duffy Baehr, John Baehr, and Janis Baehr signed the General Agreement of Indemnity, in which the defendants agreed to, in pertinent part,

> indemnify and hold the Surety harmless from and against any and all demands, liabilities, losses, costs, damages, attorneys' fees and expenses of whatever kind or nature together with interest thereon at the maximum rate allowed by law, which arise by reason of, or in consequences of, the execution by the Surety of any Bond on behalf of the Principal and whether or not the Surety shall have paid any sums in partial or complete payment thereof, including but not limited to: (2.1) sums paid including interest thereon at the maximum rate allowed by law, or liabilities incurred in the settlement or the adjustment of any and all claims, demands, damages, costs, losses, suites, proceedings, or judgments; (2.2) Expenses paid or incurred in connection with claims, suits, or judgments under such Bonds; (2.3) Expenses paid or incurred in enforcing the terms of this Agreement; (2.4) Expenses paid or incurred in procuring or attempting to procure release from liability under its Bond by Surety; (2.5) Expenses incurred in recovering or attempting to recover losses or expenses paid or incurred; (2.6) Attorney's fees and all legal expenses related to any items herein, including in-house attorney's fees, costs and expenses; investigation, accounting or engineering services; (2.7) Premiums on Bonds issued by Surety on behalf of the Principal; (2.8) Monies advanced under this Agreement.

In 2008, American Contractors first received performance bond claims from Dick

Corporation for incomplete and/or faulty work by Carolina Realty. After refusing the sum tendered offered by American Contractors as a settlement, Dick Corporation filed suit in the Northern District of Florida against multiple defendants; Carolina Realty and American Contractors were added as third-party defendants.[2] After extensive litigation, the parties entered into a 2011 settlement agreement resolving "all issues remaining between the parties regarding the Federal Action, Bradco Action, Infinity Action, Dick Claims, Carolina Work, Carolina Claims, ACIC [American Contractors] Claims, and *all other matters between the Parties relating to or arising out of the Project*" (emphasis added).

As part of the settlement, American Contractors paid a total of $262,500 "[i]n full and final settlement of all claims, demands, disputes or causes of action . . . and all other matters between the Parties relating to the Project." American Contractors asserts that it paid an additional $256,497.72 in bond claims to various other claimants. In 2009, after unsuccessfully attempting to secure indemnification from the defendants, American Contractors filed the current action for indemnification. In sum, including attorney's fees associated with litigation in Florida and South Carolina, American Contractors asserts that it has paid $677,473.59 (settlements, bond claims, costs, and attorney's fees) in connection with the performance bond claims against Carolina Realty.

Following discovery, Carolina Realty, John Paul Baehr, Kimberly Baehr, Lamar Baehr, and Duffy Baehr (the represented defendants) filed the pending motion to enforce settlement agreement or in the alternative for summary judgment.[3] (Dkt. No. 131.)

---

[2]     Carolina Realty filed counterclaims against Dick Corporation and asserted affirmative defenses. American Contractors asserted affirmative defenses.

[3]     Defendant Janis Baehr has not appeared in this action. Her ex-husband, John Baehr, filed a pro se answer

American Contractors filed a cross motion for summary judgment. (Dkt. No. 135.)

The magistrate judge filed the Report on March 12, 2012. (Dkt. No. 187.) In the Report, the magistrate judge recommended granting American Contractors' motion for summary judgment in part, denying Carolina Realty's motion to enforce settlement agreement/summary judgment, and holding in abeyance American Contractors' motion to designate an expert witness. The Report recommended finding that the claims in this action arise out of the indemnity agreement, not the Florida project, and are thus not released by the settlement agreement. The Report recommended finding that the indemnity agreement was not a contract of adhesion and that the defendants had failed their obligations under that indemnity agreement. However, the Report recommended denying American Contractors' motion for summary judgment as to the amount of damages. Additionally, the Report recommended denying American Contractors' untimely motion to designate an expert witness.

The represented defendants timely filed objections to the Report. (Dkt. No. 193.) In the objections, the represented defendants asserted that the magistrate judge erred by considering unsupported factual allegations as to the intent behind the settlement agreement.[4] American Contractors also filed objections to the Report. (Dkt. No. 195.) In its objections, American Contractors explained the discrepancy between the two amounts of attorney's fees and asked the court to consider this new information.

---

attempting to appear on his own behalf and that of Janis Baehr. John Baehr has also filed a motion to join the motion to enforce settlement agreement/motion for summary judgment filed by the represented defendants. (Dkt. No. 163.)

[4]     The objections also asserted that (1) the magistrate judge failed to view the evidence in a light most favorable to the non-moving party, the represented defendants, when analyzing American Contractors' motion for summary judgment; and (2) the magistrate judge erred by considering the affidavit of American Contractors on the issue of attorney's fees.

**II.**

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also* Rule 56, Fed. R. Civ. P. A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The moving party, of course, bears the initial burden in showing the court that no genuine issue of material fact exists. *Celotex*, 477 U.S. at 323. Following this initial showing, the nonmoving party must produce "specific facts showing that there is a genuine issue for trial." *Id.* at 322. To do so, the nonmoving party must present more than a mere scintilla of evidence that a genuine issue of material fact exists. *Anderson*, 477 U.S. at 252. The court construes all facts and reasonable inferences arising therefrom in a light most favorable to the nonmoving party. *EEOC v. Central Wholesalers, Inc.*, 573 F. 3d 167, 174 (4th Cir. 2009).

**III.**

**A.**

The court will first address the defendant's objections to the Report's interpretation of the settlement agreement. The court finds that the settlement agreement is unambiguous and that the defendants are entitled to summary judgment.

The court notes at the outset that, in the absence of a settlement agreement, the defendants would clearly be required to indemnify American Contractors; however, the settlement agreement necessarily complicates the outcome of this case. As stated by American Contractors, "The intent of the Settlement Agreement must be discerned from the four corners of

the document"—a relatively universal principle of contract interpretation. The parties agree, as does this court, in light of the absence of a choice of law provision, Florida law controls the interpretation of the settlement agreement because it was drafted and entered into in Florida. Under South Carolina law, "a contract is controlled by the laws of the State in which it is made and to be performed." *Doctors Hosp. of Augusta, LLC v. CompTrust AGC Workers' Compensation Trust Fund*, 371 S.C. 5, 9, 636 S.E.2d 862, 864 (2006) (quoting *Murphy v. Equitable Life Assurance Soc'y of the U.S.*, 197 S.C. 393, 407, 15 S.E.2d 646, 651 (1941); *see also Unisun Ins. Co. v. Hertz Rental Corp.*, 312 S.C. 549, 551–552, 436 S.E.2d 182, 184 (Ct. App. 1993) ("Unless the parties agree to a different rule, the validity and interpretation of a contract is ordinarily to be determined by the law of the state in which the contract was made."). Under Florida law, which the court will apply to the settlement agreement, if the terms of a contract are unambiguous,

> the parties' intent must be discerned from the four corners of the document. *Robert C. Roy Agency, Inc. v. Sun First Nat'l Bank,* 468 So.2d 399, 405 (Fla. 4th Dist. Ct. App. 1985), *rev. denied,* 480 So.2d 1295 (Fla. 1985). '[W]here a contract is clear and unambiguous in its terms the court may not give those terms any meaning beyond that expressed.' *Biltmore Sys., Inc. v. Mai Kai, Inc.,* 413 So.2d 458 (Fla. 4th Dist. Ct. App. 1982). In the absence of ambiguity, the language itself is the best evidence of the parties' intent and its plain meaning controls. *Acceleration Nat'l Serv. Corp. v. Brickell Fin. Servs. Motor Club, Inc.,* 541 So.2d 738 (Fla. 3d Dist. Ct. App. 1989), *rev. denied,* 548 So.2d 662 (Fla. 1989).

*Fecteau v. Southeast Bank, N.A.*, 585 So.2d 1005, 1007 (Fla. 4th Dist. Ct. App. 1991). However, if the contract terms are ambiguous and subject to different interpretations, a question of fact is created, and intent must be determined by "the submission of evidence extrinsic to the contract." *Id.*

> Here, the settlement agreement states, in pertinent part, that the parties
> 
> fully and forever settle, release and discharge, each other, each of their predecessors, successors, assigns, agents, insurers, *sureties*, attorneys, officers,

> directors and employees from any and all past and present claims, demands, damages, debts, or causes of action, in law or in equity, damages and *losses of any and all kind or nature*, whether contingent or fixed, known and unknown claims for known and unknown damages [relating to the Florida lawsuits/claims and] *all other matters between the Parties relating to the Project* (emphasis added).

The court finds this language unambiguous and clear; thus, the court may only look to the four corners of the settlement agreement. The four corners of the settlement agreement provide that American Contractors has released all claims against Carolina Realty, its sureties, and the other defendants arising out of the Project.

In its filings, American Contractors attempts to persuade the court that the parties did not intend for the settlement agreement to release the claims in the pending action. American Contractors states, "The obvious intent of the Settlement Agreement was to settle all claims between Carolina Realty and its surety, American Contractors, on the one hand, and Dick Corporation (the general contractors) and its sureties on the other, which had been specifically plead in the Florida Ligitation." American Contractors also asserts that because this action was already pending at the time the settlement agreement was ratified, "it is only reasonable to assume that if the parties had intended to preclude the claims pending in this action, the parties would have defined the claims pending in this case . . . ."

First, it is improper for the court to make assumptions as to intent at the summary judgment stage. At the hearing on these motions for summary judgment, Carolina Realty noted that reference to these claims was unnecessary in light of the broad, general release language in the settlement agreement. Additionally, American Contractors' assertion would carry more weight if not for the fact that the settlement agreement contains provisions carving out exclusions to the broad release language—including certain indemnification claims: "This Settlement Agreement does not release Carolina or its insurers (other than [American Contractors] regarding

any insurance coverage or claims for indemnity relating to any personal injuries or property damage caused."[5] The plain language of the settlement agreement indicates that American Contractors inserted exceptions to the broad release language but did not carve out an exception for the claims asserted here.[6] Therefore, the court holds the settlement agreement is unambiguous, the alleged intent behind the settlement agreement is irrelevant[7], and all claims arising out of the project are subject to the broad release.[8]

### B.

Now that the court has determined that the contract is unambiguous, the question then remains whether American Contractors' indemnification claims "relat[e] to or aris[e] out of" the Florida project. The court holds that they do.

American Contractors asserts that the claims here arise out of the indemnification agreement, not the bond or Florida project. The court finds this argument unpersuasive. Under Florida law, the words "arising out of" have a broad meaning. *See Westmoreland v. Lumbermans Mut. Cas. Co.*, 704 So.2d 176, 182 (Fla. 4th Dist. Ct. App. 1997) ("The words ' arising out of' . . . have been said to mean 'originating from,' having its origin in,' 'growing out of,' or 'flowing from,' or in short, 'incident to' or 'having connection with . . . .'") (internal citation omitted).

---

[5]     American Contractors does not assert that its action here is premised upon this provision.

[6]     Indeed, at the hearing, counsel for American Contractors indicated that had she prepared the settlement agreement, she would have drafted this provision more broadly to expressly exclude the pending claims from the release.

[7]     The court also notes, as the represented defendants have noted, American Contractors does not cite any evidence, in the form of affidavits or otherwise, in support of its assertion that the settlement agreement was not intended to preclude the pending indemnification claims.

[8]     Furthermore, even accepting the premise that the contract is ambiguous, another basic principle of contract law is that ambiguity is construed against the drafter of the contract. *Duncan v. Little*, 384 S.C. 420, 426, 682 S.E.2d 788, 791 (2009). Florida courts have also adopted this principle. *See Hurt v. Leatherby Ins. Co.*, 380 So.2d 432, 434 (Fla. 1980) ("Generally, ambiguities are construed against the drafter of the instrument."). American Contractors drafted the settlement agreement in concert with some of the other parties to the Florida litigation. It is undisputed that none of the defendants had any role in drafting the settlement agreement; therefore, any ambiguity, which the court rejects, would be construed against American Contractors.

Under this definition, the court holds that American Contractors' indemnification claims arise out of the Florida project. Indeed, the claims flow directly out of the Florida project: American Contractors would have no claims for indemnification if not for the damages sustained by other parties due to Carolina Realty's alleged failure to perform. Furthermore, American Contractors is claiming indemnification for (1) bond claims it had to pay stemming from Carolina Realty's alleged lack of performance on the project; (2) attorney's fees arising out of litigation over Carolina Realty's alleged lack of performance on the project; and (3) attorney's fees arising out of this litigation, which to seeks to indemnify American Contractors for amounts paid and attorney's fees stemming from the earlier litigation. Each of these claims has its origins in the Florida project. Without the Florida project and Carolina Realty's alleged failure to perform in accordance with its contractual obligations in regards to that project, American Contractors would not have paid on any bond claims and would not have incurred any amount of attorney's fees. Finally, the court notes that American Contractors and Carolina Realty entered into exactly one bond agreement, which is the one at issue here.

Therefore, the court holds that American Contractors' pending indemnification claims relate to and arise out of the project. These claims are precluded by the express, unambiguous language of the settlement agreement. The defendants are entitled to summary judgment.

## IV.

In light of the court's holding, it is unnecessary for the court to address the remainder of the Report. Accordingly, in light of the reasoning above, the court declines to adopt the Report. (Dkt. No. 187.) The motion to enforce settlement agreement or in the alternative for summary judgment is **GRANTED**. (Dkt. No. 131.) The plaintiff's suit is **DISMISSED** as to all defendants. Furthermore, the plaintiff's motion for summary judgment is hereby **DENIED**. (Dkt. No. 135.)

The motion for entry of default (Dkt. No. 136), the motion to join (Dkt. No. 163), and the motion to designate expert witness (Dkt. No. 165) are **DENIED** as **MOOT**.

    **IT IS SO ORDERED.**

s/Timothy M. Cain  
Timothy M. Cain  
United States District Judge

Greenville, South Carolina  
July 9, 2012